Page 1

25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)), 161 Ed. Law Rep. 143
(Not Selected for publication in the Federal Reporter)
(Cite as: 25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)))

**H**
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,
Fourth Circuit.
Ethan ROSENFELD, a minor by his next friend Robert Rosenfeld; Arielle Rosenfeld, a minor by her next friend Robert Rosenfeld, Plaintiffs-Appellants,
v.
MONTGOMERY COUNTY PUBLIC SCHOOLS; Paul W. Vance, Dr., individually and in his official capacity as Superintendent of Schools and Member of the Board of Education; Nancy King, in her official capacity as President of the Board of Education; Reginald M. Felton, in his official capacity as Member of the Board of Education; Patricia O'Neill, in her official capacity as Member of the Board of Education; Kermit Burnett, in his official capacity as Member of the Board of Education; Montgomery County Board of Education; Sharon W. Cox, in her official capacity as Member of the Board of Education; Walter Lang, in his official capacity as Member of the Board of Education, Defendants-Appellees.
No. 01-1583.

Argued Oct. 31, 2001.
Decided Dec. 27, 2001.

Minor caucasian siblings filed racial discrimination case against school district, school board, school superintendent, and members of the board in their official capacities, alleging that admissions process for magnet schools was tainted by unlawful racial preferencing. The United States District Court for the District of Maryland, Benson E. Legg, J., granted judgment for defendants. Siblings appealed. The Court of Appeals, per curiam, held that: (1) one student lacked standing to maintain action; (2) other student's claim was moot; (3) remand to district court, to determine if documents should be sealed permanently, was warranted.

Affirmed in part, vacated in part, and remanded with instructions.

West Headnotes

[1] Federal Civil Procedure 170A €→103.2

170A Federal Civil Procedure
　　170AII Parties
　　　　170AII(A) In General
　　　　　　170Ak103.1 Standing
　　　　　　　　170Ak103.2 k. In General; Injury or Interest. Most Cited Cases

Federal Civil Procedure 170A €→103.3

170A Federal Civil Procedure
　　170AII Parties
　　　　170AII(A) In General
　　　　　　170Ak103.1 Standing
　　　　　　　　170Ak103.3 k. Causation; Redressability. Most Cited Cases
To satisfy Article III's standing requirements, a plaintiff must show that: (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. U.S.C.A. Const. Art. 3, § 1 et seq.

[2] Constitutional Law 92 €→977

92 Constitutional Law
　　92VI Enforcement of Constitutional Provisions
　　　　92VI(C) Determination of Constitutional Questions

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)), 161 Ed. Law Rep. 143
(Not Selected for publication in the Federal Reporter)
(Cite as: 25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)))

        92VI(C)2 Necessity of Determination
           92k977 k. Mootness. Most Cited Cases
(Formerly 170Bk13.30)
Student's claim of discrimination in admissions procedures of gifted and talented program in magnet school program would not be mooted by litigation process that could take years to reach conclusion, since student could seek relief through preliminary injunction or student would have standing to seek damages thereby facilitating review of constitutionality of that process.

[3] Federal Courts 170B ⇐13.30

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
           170Bk12 Case or Controversy Requirement
                170Bk13.30 k. Schools and Colleges. Most Cited Cases
Student's claim for injunctive relief relating to admissions procedures for gifted and talented program in magnet school was "moot," since the personal interest that student claimed initially, prospective damage from program's admissions policy, disappeared when he was admitted to that program.

[4] Schools 345 ⇐13(18.1)

345 Schools
    345II Public Schools
        345II(A) Establishment, School Lands and Funds, and Regulation in General
           345k13 Separate Schools for Racial Groups
                345k13(18) Actions
                      345k13(18.1) k. In General. Most Cited Cases
Student did not have "standing" to seek injunctive relief against magnet school that allegedly used racially discriminatory admissions policies in selection of students for academically competitive internship programs; although student asserted that he planned to apply to such programs, student failed to demonstrate existence of internship programs within magnet school for which he was eligible and that used selective admissions policies.

[5] Federal Courts 170B ⇐768.1

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk768 Interlocutory, Collateral and Supplementary Proceedings and Questions
                    170Bk768.1 k. In General. Most Cited Cases
Court of Appeals had jurisdiction to review district court's sealing orders, even though the sealing orders were not mentioned explicitly in the notice of appeal; district court's final order below failed to address the plaintiffs' motion to unseal documents that had previously been placed under seal, and the notice of appeal stated that the plaintiffs appealed from the order entering final judgment against them, and thus, because the district court's failure to address the plaintiffs' pending motion to unseal could only be treated as a denial of that motion, the notice of appeal from that order served as a notice of appeal from the denial of their motion.

[6] Federal Courts 170B ⇐820

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk820 k. Depositions and Discovery. Most Cited Cases
A district court's orders sealing documents are reviewed for abuse of discretion if the right of access to those documents is based in the common law.

[7] Constitutional Law 92 ⇐1170

92 Constitutional Law
    92X First Amendment in General
        92X(B) Particular Issues and Applications
           92k1170 k. In General. Most Cited Cases
(Formerly 92k82(6.1))

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)), 161 Ed. Law Rep. 143
(Not Selected for publication in the Federal Reporter)
(Cite as: 25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)))

**Federal Courts 170B ⚖776**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk776 k. Trial De Novo. Most Cited Cases
Where the right of access to judicial documents is granted by the First Amendment, a district court's order sealing documents is reviewed de novo; the order must be necessitated by and narrowly tailored to serve a compelling governmental interest. U.S.C.A. Const.Amend. 1.

[8] **Federal Civil Procedure 170A ⚖103.2**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.2 k. In General; Injury or Interest. Most Cited Cases

**Federal Civil Procedure 170A ⚖1742(2)**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)2 Grounds in General
                170Ak1742 Want of Jurisdiction
                      170Ak1742(2) k. Particular Cases and Grounds. Most Cited Cases
A determination that a plaintiff lacks standing deprives a court of Article III jurisdiction, and where jurisdiction ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause. U.S.C.A. Const. Art. 3, § 1 et seq.

[9] **Federal Courts 170B ⚖541**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(B) Appellate Jurisdiction and Procedure in General
            170Bk541 k. In General. Most Cited Cases

**Federal Courts 170B ⚖546**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(B) Appellate Jurisdiction and Procedure in General
            170Bk545 Parties
                170Bk546 k. Intervention or Addition of New Parties on Appeal. Most Cited Cases
Court of Appeals' jurisdiction to review a district court's sealing orders is based not on the court's jurisdiction over the subject matter of the underlying claims addressed by the court, but on the public right of access, under the common law or the First Amendment, to judicial documents; it is this public right of access that gives third party press intervenors standing to intervene on appeal to seek review of sealing orders of the district courts. U.S.C.A. Const.Amend. 1.

[10] **Federal Courts 170B ⚖947**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(L) Determination and Disposition of Cause
            170Bk943 Ordering New Trial or Other Proceeding
                170Bk947 k. Further Evidence, Findings or Conclusions. Most Cited Cases
Remand to district court, to determine if documents should be sealed permanently, was warranted; although documents were sealed under Family Educational Rights and Privacy Act (FERPA) while litigation was in progress, there was no indication on the record that court gave public notice or opportunity for interested parties to object and district court's final order in case made no mention of sealed documents nor of why they were sealed or why alternatives to leaving them sealed were rejected. General Education Provisions Act, § 444, as amended, 20 U.S.C.A. § 1232g.

[11] **Constitutional Law 92 ⚖2089**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)), 161 Ed. Law Rep. 143
(Not Selected for publication in the Federal Reporter)
(Cite as: 25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)))

92 Constitutional Law
　92XVIII Freedom of Speech, Expression, and Press
　　92XVIII(V) Judicial Proceedings
　　　92XVIII(V)1 In General
　　　　92k2089 k. Court Documents or Records. Most Cited Cases
　(Formerly 92k90.1(3))

Records 326 ⚖═32

326 Records
　326II Public Access
　　326II(A) In General
　　　326k32 k. Court Records. Most Cited Cases

There are two potential sources of a public right of access to judicial materials: the common law's presumption of a right to access and the First Amendment right of access. U.S.C.A. Const.Amend. 1.

[12] **Constitutional Law 92 ⚖═2089**

92 Constitutional Law
　92XVIII Freedom of Speech, Expression, and Press
　　92XVIII(V) Judicial Proceedings
　　　92XVIII(V)1 In General
　　　　92k2089 k. Court Documents or Records. Most Cited Cases
　(Formerly 92k90.1(3))

Records 326 ⚖═32

326 Records
　326II Public Access
　　326II(A) In General
　　　326k32 k. Court Records. Most Cited Cases

First Amendment right of access to judicial documents, which provides a stronger presumption in favor of access than the common law right, applies to documents submitted in support of summary judgment motions in civil cases; the First Amendment standard requires a showing that the denial of access is necessitated by a compelling government interest and is narrowly tailored to serve that interest in order to justify the sealing of documents. U.S.C.A. Const.Amend. 1.

[13] **Federal Courts 170B ⚖═776**

170B Federal Courts
　170BVIII Courts of Appeals
　　170BVIII(K) Scope, Standards, and Extent
　　　170BVIII(K)1 In General
　　　　170Bk776 k. Trial De Novo. Most Cited Cases

In a case where the First Amendment is implicated in providing the right of access to judicial documents, review by the Court of Appeals is de novo. U.S.C.A. Const.Amend. 1.

*126 Appeal from the United States District Court for the District of Maryland, at Greenbelt. Benson E. Legg, District Judge. (CA-98-1793-L).**ARGUED:** John Willard Montgomery, Washington, D.C., for Appellants. Patricia Ann Brannan, Hogan & Hartson, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Maree F. Sneed, Audrey J. Anderson, Hogan & Hartson, L.L.P., Washington, D.C.; Judith S. Bresler, Reese & Carney, L.L.P., Columbia, Maryland, for Appellees.

Before WILLIAMS and TRAXLER, Circuit Judges, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.

OPINION

PER CURIAM.

**1 Appellants Ethan and Arielle Rosenfeld (collectively, the Rosenfelds) appeal from the district court's orders dismissing their racial discrimination claims against Appellees Montgomery County Public Schools, Montgomery County School Board, and members of the Montgomery County School Board (collectively, MCPS) for lack of standing,

Page 5

25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)), 161 Ed. Law Rep. 143
(Not Selected for publication in the Federal Reporter)
(Cite as: 25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)))

and sealing certain documents produced during the litigation of their case below. Finding no error in the district court's standing analysis, we affirm the dismissal of the Rosenfelds' claims on the reasoning of the district court. Because we conclude, however, that the district court erred in its failure to follow the procedures prescribed in this Circuit for sealing documents, we vacate and remand the district court's sealing order for consideration of the appropriate factors.

I.

A.

The Rosenfelds, students in the Montgomery County public schools, brought this action by and through their father, Robert Rosenfeld, in the United States District Court for the District of Maryland challenging various procedures and policies they allege are used by MCPS in the selection of students for participation in "gifted and talented" programs within the public school system in their county. They alleged that these policies and procedures discriminate against students who are not members of "preferred" minority racial groups by effectively creating different, less stringent selection criteria for minority students applying to gifted and talented programs and thereby disadvantage white and Asian students in the competition for a limited number of program spaces. The Rosenfelds sought injunctive relief against all defendants in their official capacities under the Equal Protection Clause of the Fourteenth Amendment (Count One), and against all defendants in their official capacities under Title VI of the Civil Rights Act, 42 U.S.C.A. § 2000d et seq. (West 1994) (Count Two).[FN1] Ethan Rosenfeld also sought monetary damages from all defendants under the Equal Protection Clause of the Fourteenth Amendment (Count Three)[FN2] and from defendant Dr. Paul Vance in his personal capacity under 42 U.S.C.A. § 1983 (Count Four).

FN1. The Rosenfelds named Montgomery County Public Schools, the Montgomery Board of Education, Dr. Paul Vance individually and in his official capacity as Superintendent of Schools and a member of the Board of Education, and all other members of the Montgomery Board of Education in their official capacities in the Complaint.

FN2. The district court later found that Ethan Rosenfeld had effectively amended this Count in his Opposition to the Motion to Dismiss, filed in response to a motion by MCPS, in which he stated that he also intended to sue under 42 U.S.C.A. § 1983 (West Supp.2001).

*127 After discovery, the Rosenfelds and MCPS each filed motions for summary judgment and memoranda in support of those motions.[FN3] The district court granted MCPS's motion on the ground that Ethan and Arielle lacked standing to challenge the admissions policy of any MCPS program. The district court found that Arielle lacked standing because her prospective injury was not imminent enough to meet the constitutional requirement of injury in fact. The district court found that Ethan's claim for injunctive relief was barred because he had already been accepted into the only program with respect to which he asserted prospective harm from admissions policies-the International Baccalaureate (IB) program at Richard Montgomery High School. The Rosenfelds appeal from that order.

FN3. Ethan Rosenfeld's claims for damages were dismissed before the summary judgment motions were filed. He does not appeal the dismissals and has abandoned all claims for damages at this stage.

The district court entered three orders placing or maintaining documents under seal during the course of the litigation below. After discovery was commenced, MCPS filed an unopposed motion for an order to place certain materials under seal, which

Page 6

25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)), 161 Ed. Law Rep. 143
(Not Selected for publication in the Federal Reporter)
(Cite as: 25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)))

the district court granted on July 9, 1999. The district court's first order sealed information the Rosenfelds sought through discovery, providing as follows:

**\*\*2** [C]ounsel for the plaintiffs (including plaintiffs' attorney, law firm staff, and any consultant retained for the purposes of this litigation to whom they may provide the information) will be prohibited from releasing to any other person any information produced in discovery reflecting the home address, home phone number, biography, family, physiology, religion, academic achievement, or physical or mental ability of any student other than the plaintiffs.

The order further provided that any such information submitted to the court in the course of motions or for other purposes in the action, including introduction as evidence at trial, would be under seal until the Court ruled on a motion to keep the information under seal pursuant to Fed.R.Civ.P. 26(c), and that if no such motion was filed within twenty days, it would be presumed there was no objection to the unsealing of the material.[FN4]

> FN4. Although the district court stated in this order that it would presume there was "no objection to the unsealing of the sealed material" absent a motion filed within twenty days pursuant to Fed.R.Civ.P. 26(c), there is no indication in the record before us either that any such motion was filed or that the district court took further action with respect to this first sealing order. (J.A. 63.)

Next, the district court ruled, on June 26, 2000, on a motion by MCPS to maintain under seal certain information covered by the initial confidentiality order and submitted to the district court in support of the parties' summary judgment motions, as well as a section of MCPS's summary judgment motion itself. The district court entered an order on June 27, 2000 maintaining the information and the portion of MCPS's summary judgment motion under seal. Finally, on July 17, 2000, the district court entered a third order maintaining two additional items under seal, namely the Rosenfelds' Reply Brief in support of their motion for summary judgment and a second report prepared by their expert, Dr. Lerner (the first report having been placed and maintained under seal pursuant to the district court's prior orders).

While the parties' motions for summary judgment were pending before the district court, the Rosenfelds filed a motion to unseal all of the documents then under seal in the case. The Rosenfelds argued in support of their motion that the district **\*128** court, in considering whether to maintain or place materials under seal to that point, had not complied with the Fourth Circuit's procedural rules that apply when the materials in question have been submitted to the court for use in the summary judgment process. The district court granted MCPS's motion for summary judgment without ruling on the Rosenfelds' motion to unseal materials.

B.

A number of gifted and talented programs are offered within the Montgomery County public schools at the elementary school, middle school, and high school levels.[FN5] The Montgomery County Board of Education has promulgated a system-wide "Policy on Gifted and Talented Students." The Policy lays out the general procedures and guidelines under which gifted and talented programs are to be implemented within MCPS, including the general procedures for identification of gifted and talented students. The "Purpose" section of that document states that MCPS's gifted and talented programs are designed to meet "the needs of gifted and talented students for differentiated educational programs and/or services beyond those normally provided by the regular school program...." (J.A. at 327.)

> FN5. At the elementary school level, four "CENTER" programs for the highly gifted serve gifted and talented students within

Page 7

25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)), 161 Ed. Law Rep. 143
(Not Selected for publication in the Federal Reporter)
(Cite as: 25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)))

MCPS. At the middle school level, several "magnet" programs are available to gifted and talented students. And at the high school level, gifted and talented students may participate in any of a number of programs collectively known as the "honors" program.

**3 The various gifted and talented programs within the Montgomery County public schools have distinct standards and criteria for application and admission. Differing screening factors are considered in the identification of students who will participate in these programs, depending on the specifics of the program in question.

At the time of oral argument, Ethan was a student in the IB program at Richard Montgomery High School. Arielle was a student in the Magnet Program in the Humanities and Communications at Eastern Middle School (Eastern Magnet). The IB program and Eastern Magnet are both academically competitive gifted and talented programs.

II.

[1] We review de novo the district court's grant of summary judgment to MCPS on Ethan and Arielle's claims for injunctive relief. *See Providence Square Assocs., L.L.C. v. G.D.F., Inc.,* 211 F.3d 846, 850 (4th Cir.2000). To satisfy Article III's standing requirements, a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

[2] After considering Arielle's arguments regarding her standing to bring this suit, we find no error in the district court's grant of summary judgment to MCPS on that ground. Accordingly, we affirm the district court's order as to Arielle's claims on its reasoning. *See Rosenfeld v. Montgomery County Pub. Sch.,* Civ. No. L-98-1793 (D.Md. March 28, 2001) (J.A. at 83). We address below certain of Arielle's arguments on appeal for the sake of completeness.

*129 Arielle argues on appeal that because her claim of discrimination in the IB program's admissions procedures could take years to litigate to conclusion, she must be allowed to proceed with the claim now in order to have a chance of obtaining effective relief. If she cannot seek relief now, Arielle argues, her claim may become moot before it is resolved in the court, as she will apply to and either be accepted or rejected by the IB program before the litigation is concluded. We do not find this contention persuasive, as it ignores the availability of preliminary injunctive relief. Arielle had the option to seek preliminary injunctive relief below, but did not do so. Two recent cases from our Circuit, relied on to a significant extent by the Rosenfelds, illustrate the availability of such relief in the context of racial discrimination claims. *See Eisenberg v. Montgomery County Pub. Sch.,* 197 F.3d 123, 133-34 (4th Cir.1999), *cert. denied,* 529 U.S. 1019, 120 S.Ct. 1420, 146 L.Ed.2d 312 (2000) (granting preliminary and final injunctive relief on appeal in a racial discrimination case against MCPS); *Tuttle v. Arlington County Sch. Bd.,* 195 F.3d 698, 708 (4th Cir.1999), *cert. dismissed,* 529 U.S. 1050, 120 S.Ct. 1552, 146 L.Ed.2d 364 (2000) (recognizing the availability and appropriateness of preliminary and permanent injunctive relief against school board on racial discrimination claim, but vacating the district court's injunction as overbroad).

**4 Nor does Arielle's contention that preliminary injunctive relief could not solve the problem of MCPS's alleged discrimination advance her claim of standing. She argues that even if she were granted preliminary injunctive relief, she would likely

Page 8

25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)), 161 Ed. Law Rep. 143
(Not Selected for publication in the Federal Reporter)
(Cite as: 25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)))

be admitted or rejected before her claim was litigated to conclusion, and her claim thus would be mooted before final resolution. This chain of events, she alleges, would repeat itself for any student challenging MCPS's policies, with the result that no court would ever have occasion to determine ultimately the validity of MCPS's gifted and talented admissions policies. This contention, too, is unpersuasive. It is simply not the case that a challenge to MCPS's gifted and talented admissions policies could not be litigated to final resolution before the plaintiff's claim is mooted. A student denied admission to a gifted and talented program through a racially discriminatory admissions process might still have standing to seek damages,[FN6] facilitating review of the constitutionality of that process. *See, e.g., Johnson v. Bd. of Regents,* 263 F.3d 1234, 1237, 1239 (11th Cir.2001) (affirming award of damages to students denied admission under racially discriminatory admissions process implemented by the University of Georgia).

> FN6. Ethan Rosenfeld initially sought damages, but dropped those damage claims not dismissed on sovereign immunity grounds because he could not show current or retrospective damage from MCPS's policies.

[3] We conclude likewise that Ethan Rosenfeld's claims seeking injunctive relief are barred, and the district court properly granted summary judgment to MCPS on those claims. We affirm this ruling substantially on the reasoning of the district court, noting in addition only that Ethan's claims might appropriately be said to be barred as moot, rather than for lack of standing. *See Rosenfeld v. Montgomery County Pub. Sch.,* Civ. No. L-98-1793 (D.Md. March 28, 2001) (J.A. at 83).

At the outset of this litigation, Ethan's claim for injunctive relief related to the IB program's admissions procedures. Because he has since been admitted to that program, his claim for injunctive relief barring application of those procedures to him is now moot. As the Supreme Court has explained, the standing inquiry is a question of whether the plaintiff has "the requisite personal interest that must exist *130 at the commencement of the litigation." *Laidlaw,* 528 U.S. at 189, 120 S.Ct. 693 (internal quotation omitted). This interest (including the constitutional minimum requirements) must continue to exist at every stage of review, or the action is moot. *Id.* Ethan's claim is moot because the "personal interest" he claimed initially-prospective damage from the IB program's admissions policy-disappeared when he was admitted to that program.

[4] Finally, we note that Ethan asserts on appeal that he plans to apply to one or more academically competitive internship programs within Richard Montgomery High School, and that he has standing to challenge purportedly racially discriminatory admissions policies employed in the selection of students for those programs. This claim has no merit. On the record before us, Ethan has failed to demonstrate even the existence of internship programs within the Montgomery County public schools for which he is eligible and which employ selective admissions policies. The one internship program that apparently does have a selective admissions policy, a program offered through the National Institutes of Health, is a program for which Ethan is ineligible because he is already a student in a gifted and talented high school program. Moreover, that program's admissions policy does not take race into account in any way. Ethan's claims for injunctive relief were thus properly dismissed.

III.

**5 [5] We turn now to the district court's orders placing or maintaining documents under seal. When the district court ruled on the parties' motions for summary judgment, granting summary judgment to MCPS on the Rosenfelds' remaining claims, it had pending before it the Rosenfelds' motion to unseal the materials sealed pursuant to those three orders. In their motion, the Rosenfelds asked that the district court reconsider its orders sealing documents

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.
Case 5:07-cv-00426-H    Document 291-1    Filed 07/14/10    Page 8 of 11

25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)), 161 Ed. Law Rep. 143
(Not Selected for publication in the Federal Reporter)
(Cite as: 25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)))

in light of the considerations prescribed by Fourth Circuit case law. The district court did not address this motion in its order, which granted summary judgment to MCPS and disposed of the case.[FN7]

> FN7. Although none of the district court's orders sealing documents purported explicitly to seal those documents permanently, the parties assume, and we agree, that those orders must be considered to be of continuing force, especially given the district court's failure to rule on the Rosenfelds' motion to unseal the sealed material. *See* note 8, *infra*.

[6][7] On appeal, the Rosenfelds assert that the district court's apparent failure to follow the procedures established in this circuit's case law for sealing materials involved in court cases was reversible error. A district court's orders sealing documents are reviewed for abuse of discretion if the right of access to those documents is based in the common law; such orders are reviewed de novo and must be necessitated by and narrowly tailored to serve a compelling governmental interest where the right of access is granted by the First Amendment. *See, e.g., In re State-Record Co.,* 917 F.2d 124, 127 (4th Cir.1990).

A.

[8] As a threshold contention on the issue of sealing of the documents below, MCPS contends that affirming the district court's standing determination deprives us of jurisdiction to review the district court's decision to seal documents.[FN8] It is true that *131 a determination that the plaintiff lacks standing deprives a court of Article III jurisdiction, and that where jurisdiction " 'ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.' " *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)). That the Rosenfelds do not have standing to challenge MCPS's gifted and talented admissions policies, however, does not deprive them of standing on appeal to challenge the district court's sealing orders.

> FN8. MCPS also argues that we are deprived of jurisdiction to review the district court's sealing orders because those orders are not mentioned explicitly in the notice of appeal. *Cf.* Fed. R.App. P. 3(c)(1)(B) (stating that a notice of appeal must "designate the judgment, order, or part thereof being appealed"). We decline to dismiss the Rosenfelds' contention on this ground. The district court's final order below failed to address the Rosenfeld's pending motion to unseal the sealed documents in this case. The Rosenfelds' notice of appeal states that they appeal "from [the] Order entering final judgment against them." Because the district court's failure to address the Rosenfelds' pending motion to unseal in its final order can only be treated as a denial of that motion, the Rosenfeld's notice of appeal from that order serves as notice of appeal from the denial of their motion, and the issue is properly before us.

We have held that the press has standing to intervene in actions in which it is not otherwise a party to seek review of a district court's order sealing documents and court records. *See Stone v. Univ. of Maryland Med. Sys. Corp.,* 855 F.2d 178, 180-81 (4th Cir.1988) (addressing district court's failure to follow Fourth Circuit sealing procedures on intervenor Baltimore Sun's motion for access to sealed court records); *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 250-54 (4th Cir.1988) (addressing district court's procedural failure in the context of intervenor Washington Post's motion to unseal documents); *see also In re Tribune Co.,* 784 F.2d 1518, 1521 (11th Cir.1986) (holding that the press has standing to intervene where not otherwise a party to petition for access to court documents

25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)), 161 Ed. Law Rep. 143
(Not Selected for publication in the Federal Reporter)
(Cite as: 25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)))

and records).

We have likewise recognized standing in news organizations petitioning for writs of mandamus instructing district courts to unseal documents previously ordered sealed. *See In re Time, Inc.,* 182 F.3d 270, 271-72 (4th Cir.1999) (addressing motions of press-petitioners for writ of mandamus compelling district court to unseal documents in an ongoing criminal proceeding); *In re State-Record Co.,* 917 F.2d at 126-27 (stating that "[m]andamus is the preferred method [of] review [for] orders restricting press activity relating to criminal proceedings ...") (quoting *In re Washington Post Co.,* 807 F.2d 383, 388 (4th Cir.1986)).

**6 [9] We see no reason why the standing of a news organization to seek review of a district court's sealing order should differ from that of a party in the Rosenfelds' position. *Cf. Ashcraft v. Conoco, Inc.,* 218 F.3d 288, 302-03 (4th Cir.2000) (concluding that a district court's sealing order was invalid for failure to comply with Fourth Circuit procedures; finding it unnecessary to conclude whether the press enjoys any "special right of access" to sealed material greater than that a private citizen would enjoy). Indeed, both parties continue to be bound, as a news organization would be, by the district court's sealing orders entered below. The caselaw establishes that our jurisdiction to review a district court's sealing orders is based not on our jurisdiction over the subject matter of the underlying claims addressed by the district court, but on the public right of access, under the common law or the First Amendment, to judicial documents. It is this *public* right of access that gives third party press intervenors standing to intervene on appeal to seek review of sealing *132 orders of the district courts. The dismissal of the Rosenfelds' claims on standing grounds thus does not deprive this Court of jurisdiction to review the sealing order below; the Rosenfelds have standing to seek review independent of their standing on the underlying claims.

B.

[10][11][12][13] Turning to the merits of the Rosenfelds' contentions, we must first determine what standard of review governs our consideration of the district court's order. There are two potential sources of a public right of access to judicial materials-the common law's presumption of a right to access and the First Amendment right of access. *Rushford,* 846 F.2d at 253. The First Amendment right of access, which provides a stronger presumption in favor of access than the common-law right, applies to documents submitted in support of summary judgment motions in civil cases. *Id.* ("[t]he more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case"). The First Amendment standard requires a showing that the denial of access is necessitated by a compelling government interest and is narrowly tailored to serve that interest in order to justify the sealing of documents. *Id.; see also In re State-Record Co.,* 917 F.2d at 127. Because the First Amendment provides the right of access here, our review is de novo. *In re State-Record Co.,* 917 F.2d at 127.

In making the determination whether sealing was appropriate under the First Amendment standard, the district court was bound to follow certain procedures prescribed by the caselaw of this circuit. Fourth Circuit caselaw establishes that there are a number of steps a district court must take before sealing court records. In *Rushford,* we stated the general rule:

> First, the district court must give the public adequate notice that the sealing of documents may be ordered. Second, the district court must provide interested persons an opportunity to object to the request before the court makes its decision. Third, if the district court decides to close a hearing or seal documents, it must state its reasons on the record, supported by specific findings. Finally, the court must state its reasons for rejecting alternatives to closure.

**7 846 F.2d at 253-54 (quoting *In re Knight Publ'g Co.,* 743 F.2d 231, 234-35 (4th Cir.1984))

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 11

25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)), 161 Ed. Law Rep. 143
(Not Selected for publication in the Federal Reporter)
(Cite as: 25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)))

(internal citations and quotation marks omitted); *see also Ashcraft,* 218 F.3d at 302 (enumerating same requirements) (citing *Knight* ).

MCPS asserts that we should find the district court's reasons for sealing the documents apparent from the context surrounding its initial orders sealing and maintaining them under seal. These orders, asserts MCPS, were entered in response to MCPS's motions pursuant to the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C.A. § 1232g. That law, MCPS argues, limits its ability, and therefore also the court's, to release personally identifiable information contained in educational records. There is no doubt that the district court should consider FERPA in making its determination whether sealing of the documents in question is appropriate under the applicable First Amendment standard. MCPS's assertions as to the district court's consideration process, however, cannot substitute for the explicit enumeration, on the record and by the court itself, of that process as dictated by our precedent.

As there is no indication on the record that the court gave public notice or an opportunity for interested parties to object and the district court's final order makes no mention of the sealed documents, nor of *133 why they were sealed or why alternatives to leaving them sealed were rejected, we find that the court did not comply with the procedures required by our precedent. Because we conclude that the district court's final order disposing of the case must be treated as giving continuing effect to the sealing orders entered previously, we vacate that order to the extent it thereby ordered documents sealed permanently, and we remand for reconsideration in light of this opinion.

IV.

For the reasons stated above, the judgment of the district court is

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.*

C.A.4 (Md.),2001.
Rosenfeld v. Montgomery County Public Schools
25 Fed.Appx. 123, 2001 WL 1658893 (C.A.4 (Md.)), 161 Ed. Law Rep. 143

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.