IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07 CV 426-H

| | |
|---|---|
| ADVANCED INTERNET TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> DELL INC., AND DELL FINANCIAL SERVICES, LLC, <br><br> Defendants. | DELL INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SANCTIONS AGAINST DELL INC. FOR FAILURE TO COMPLY WITH A COURT ORDER |

## INTRODUCTION

Having failed to respond *at all* to Dell's Second Request for Production of Documents,[1] Advanced Internet Technologies ("AIT") nevertheless asks the Court to sanction Dell Inc. ("Dell") for an alleged inadequate production of documents. AIT, however, offers only hyperbole and conjecture to support its Second Motion for Sanctions, apparently choosing to ignore the facts in an effort to engage in repeated litigation of discovery issues rather than the merits of this action.[2] Thus, even a slight look beyond the arguments presented in AIT's brief demonstrates that this motion is based entirely on (i) AIT's effort to re-characterize its document request to apply to a

---

[1] Dell's Motion to Strike portions of AIT's affidavits filed in response to Dell's Motion for Partial Summary Judgment that purport to rely on documents that should have been produced to Dell is pending with the Court [DE # 255].

[2] AIT's eagerness to raise unsubstantiated discovery disputes is evidenced by the fact that AIT waited a total of five business days between sending a letter to Dell on Wednesday, August 4, 2010 (AIT Brief, Ex. D) and filing this motion on Thursday, August 12, 2010. As a result, AIT's motion is filled with factual inaccuracies, such as the claim that Dell's supplemental production was made only from the sixteen prior custodians from whom Dell had produced documents, when in fact Dell's supplemental production came from twelve entirely new custodians, as discussed below.

LEGAL02/32114864v3

"decision" to recall the affected computers that AIT's knows never occurred; and (ii) AIT's tortured effort to establish a connection (that does not exist) between Dell's supplemental document production and a single, unrelated email produced to AIT eight months earlier.  In reality, Dell produced thousands of pages of documents from twelve *additional* document custodians in response to two additional document requests from AIT, and in so doing Dell complied with this Court's April 30, 2010 Order [DE # 199]. AIT offers no evidence to the contrary and has not approached a showing that would warrant sanctions.  Dell, therefore, respectfully requests that this motion be denied.

## **BACKGROUND AND SUMMARY**

AIT's motion references Dell's responses to AIT's Request Nos. 1 and 6 in its Second Request for Production, but all of AIT's arguments relate only to Request No. 1, which sought:

> Each and every document in Dell's possession or control referencing Dell's actions [to] withhold, withdraw, purge or recall from the marketplace or from customers Dell OptiPlex computers or their sub-assemblies, parts, or components containing Nichicon capacitors that were the subject of the RC1, RC2 or RC3 studies.  Please include in this Production all documents disclosing any participation by quality engineering and supplier management functions within Dell in such attempts, including any sampling to determine the success of such attempts, as disclosed at Dell's September 28, 2009 deposition.

(AIT's Second Request for Production, No. 1) [DE # 129-6].  In its Order of April 30, 2010, the Court agreed that "this language is extremely broad," but Ordered Dell to produce "documents in Dell's possession regarding withholding, withdrawing, or purging of Dell OptiPlex computers because of problematic capacitors that were the subject of the study at issue." [DE # 199, p. 20].

- 2 -
LEGAL02/32114864v3
Case 5:07-cv-00426-H   Document 312   Filed 08/26/10   Page 2 of 13

AIT's motion is premised *entirely* on its mischaracterization of this document request as relating to an alleged "***decision*** to 'withhold, withdraw or purge Dell OptiPlex computers because of problematic capacitors," which AIT plainly equates to a recall of the affected computers. (AIT Brief, p. 2) (emphasis added). It is telling, however, that the word "decision" was added by AIT in its brief and *is not* used anywhere in Request No. 1. The absence of the word "decision" is not surprising given AIT's knowledge - well before filing this motion - that Dell did not recall computers containing Nichicon capacitors. Rather, as Dell has indicated repeatedly in this litigation, Dell worked with its customers on a customer-by-customer basis to resolve issues related to Nichicon capacitors, and it extended the warranties on the motherboards for all of the potentially affected computers (*See* Dell MPSJ, p. 5) [DE # 214]. Consequently, there was no single "decision" to "withdraw, withhold or purge" the OptiPlex computers, a fact that AIT questioned Dell witnesses about at deposition.[3]

Accordingly, AIT's hyperbole and conjecture regarding who at Dell must have participated in "a decision of such significance as Dell's 'withholding, withdrawing, or purging of Dell OptiPlex computers because of problematic capacitors,'" (AIT Brief, p. 4) is either misinformed or disingenuous, but either way it does not support AIT's claims in this motion.

Contrary to the new interpretation offered in AIT's brief, Request No. 1 actually concerns Dell's efforts to work with its motherboard suppliers and with Nichicon to stop

---

[3] *See* Hutten Dep. 41:11 – 16 (On June 4, **2009**, AIT questioned Dell's 30(b)(b) witness, Mr. Hutten: "Why did you guys not issue a recall for the capacitors?") (attached hereto as **Exhibit A**); *see also* Luhrs Dep. 43:1 – 44:6; 132:18 – 133:1 (AIT questioned Mr. Luhrs about Dell's response to the Nichicon situation, including Dell's decision to work with customers individually) (attached hereto as **Exhibit B**). In light of AIT's own questioning of Dell witnesses, AIT's claim that Dell has refused to disclose "whether it even, in fact, made such a decision or carried through with it," (AIT Brief, p. 3) is false.

- 3 -
LEGAL02/32114864v3
Case 5:07-cv-00426-H   Document 312   Filed 08/26/10   Page 3 of 13

the use of Nichicon capacitors and remove them from its supply chain.  Two pieces of information that AIT conveniently ignores render the context of the request clear.  First, as noted above, when AIT served the request on November 13, 2009, it knew that Dell had never recalled the OptiPlex computers,[4] so the "decision" that forms the centerpiece of AIT's motion does not exist.  Second, AIT's request refers to "***actions,***" not decisions, and the clarifying language in AIT's own request lends important context that demonstrates that AIT sought information from precisely the individuals from whom Dell collected documents, as discussed below.  Thus, the second sentence in AIT's request states:

> Please include in this Production all documents disclosing any participation by **quality engineering** and **supplier management** functions within Dell in such attempts, including any sampling to determine the success of such attempts, as disclosed at Dell's September 28, 2009 deposition.

(AIT's Second Request for Production, No. 1) (emphasis added) [DE # 129-6].  The September 28, 2009 deposition referenced by AIT was the deposition of James Hutten, wherein AIT asked Mr. Hutten:

> Q.  Okay.  Dell's responsive steps to the known defects and design or the components of the OptiPlex is also a noticed topic today.  And you indicated that Dell attempted to purge the capacitors believed to be faulty prior to the sale; is that correct?
>
> A.  Yes.
>
> Q.  Do you know if there were any reports or samplings done to determine whether or not those capacitors had been purged prior to the units being sold?
>
> A.  There would have been a reporting into the quality organization or the supplier management organization working with our supplier partners, Nichicon, or it could have been the board -- the motherboard manufacturers.

---

[4] *See* reference to Hutten's Deposition *infra* in footnote 3.  That questioning clearly indicates that AIT's counsel knew in June of 2009 that Dell did not issue a recall for the OptiPlexes potentially affected by the Nichicon capacitors.

- 4 -

> Q. And who would have done that reporting?
>
> A. The quality organization or the supply management organization.

(Hutten Dep. 67: 1 – 12) (attached hereto as **Exhibit C**).  AIT's questions to Mr. Hutten and Mr. Hutten's answers plainly deal with Dell's efforts to work with its suppliers and with Nichicon to address the situation with the Nichicon capacitors.  Thus, given (i) the lack of a recall or other market-wide withdrawal of the computers, (ii) AIT's knowledge of the lack of a recall, (iii) AIT's reference in its Request to quality engineering and supplier management functions, and (iv) AIT's reference to the deposition questions posed to Mr. Hutten about "sampling," Dell properly focused its document collection on identifying documents that reflected Dell's efforts to work with its suppliers and/or Nichicon to remove capacitors from the supply chain.  As discussed in detail below, Dell has complied fully with the Court's Order to produce the requested documents.

AIT's efforts to connect the non-existent "decision" to recall the capacitors to an entirely unrelated email is also misplaced and only serves to confirm the lack of any merit underlying this motion.  AIT's mischaracterization of Ms. Tyson's email is substantial.  First, raising an issue that has absolutely no connection to AIT's supplemental document production, AIT speculatively asserts that the email "might have been altered in some way," but AIT is wrong. (AIT Brief, p. 5, n. 4).  Dell produced the entire email chain to AIT exactly as it existed originally in the files of the Dell employee from whom the entire email chain was collected, a fact that Dell reported to AIT in a letter about this email.  (Meisel Dec. ¶ 15 (attached hereto as **Exhibit D**); *see also* Letter from Elder to Kaplan dated July 23, 2010 (attached hereto as **Exhibit E**)).  As is apparent on its face, the email chain does contain an email from Lynn Tyson that was cut and

LEGAL02/32114864v3

pasted into another email, but that fact is hardly unusual or novel, and AIT's vague assertions about possible "alterations" are nothing other than a prime example of AIT's willingness - demonstrated throughout this sanctions motion - to ignore facts in favor of conjecture.

AIT next asserts that the email demonstrates that Dell senior executives "were involved" in the development of the referenced talking points. In reality, the email demonstrates that certain senior executives were copied on an email that reports the development of the referenced talking points, but there is no indication any of the copied recipients participated in their development. Moreover, AIT's statement that the referenced talking points were "designed to minimize to Dell's customers and shareholders the full extent of capacitor failures in the OptiPlex computers" (AIT Brief, p. 2) is AIT's unsupported spin, which bears no relationship to the actual contents of the email. The email contains four short, straightforward points, and it does not purport to characterize in any manner the extent of the capacitor failures at issue. Next, AIT does not point to any connection whatsoever between the referenced email and the documents sought in Request No. 1. As noted above, any assertion that anyone copied on this email "must have" been involved in a "decision" to recall the OptiPlex computers is unsupportable. In reality, the referenced email has nothing to do with Request No. 1, aside from their general relationship to the Nichicon issue, which is true of hundreds of documents in Dell's production.

AIT's motion, therefore, is a tortured effort to draw a connection between an email about communications talking points and an entirely unrelated document request to which Dell properly responded. Dell respectfully requests that AIT's motion be denied.

- 6 -
LEGAL02/32114864v3
Case 5:07-cv-00426-H   Document 312   Filed 08/26/10   Page 6 of 13

# ARGUMENT AND AUTHORITY

### A.  DELL COMPLIED WITH THE COURT'S ORDER TO PRODUCE ADDITIONAL DOCUMENTS.

As discussed above, in light of the wording of the request, the reference to James Hutten's September 29, 2009 deposition testimony, and the lack of a recall (or other market-wide withdrawal of the OptiPlex computers), Dell properly understood AIT's Request No. 1 to relate to the actions Dell undertook to work with its suppliers to remove Nichicon capacitors from the supply chain or otherwise prevent them from being used in Dell computers.  Dell's effort to locate and produce the documents responsive to Request Nos. 1 and 6 are detailed in the attached Declaration of Renee M. Meisel.

Dell first identified individuals who might have responsive documents by (i) interviewing Bill Luhrs, a former Director of Client Quality at Dell who worked extensively on the Nichicon issue and who AIT deposed in this case; (ii) interviewing two current Vice Presidents identified by Mr. Luhrs; (iii) reviewing documents produced in this case referencing the Nichicon issue; and (iv) asking those individuals identified through other means for additional names. (Meisel Dec. ¶ 7, 9 – 11).  Dell identified sixteen employees who potentially had responsive documents, and after follow-up, twelve of those individuals had documents responsive to either Request No. 1 or 6 (*Id*. at ¶7, 12).  Dell collected, reviewed and produced those responsive documents.  (*Id*. at ¶ 12).  These individuals are not the same custodians from whom Dell previously produced documents as AIT erroneously asserts in its brief.  (*Id*. at ¶ 5 and 7).

Contrary to AIT's unfounded assertions, Dell did not simply produce one document from each of its prior sixteen custodians.  Moreover, it is readily apparent from the job titles of the individuals from whom Dell produced documents that Dell properly

identified persons who would have worked on the Nichicon issues. Indeed, AIT's request refers specifically to "quality engineering" and "supplier management functions within Dell," and the twelve individuals included a Vice President of Quality Engineering, a Vice President of Operations as well as a Global Commodity Manager, a Global Procurement Senior Manager, a Failure Analysis Senior Engineering Consultant, a Director of Product Operations Engineering and a number of people from the Product Group, including a Development Engineering Strategist and a Development Engineering Senior Manager.[5] (*Id*. at ¶ 12).

AIT has undoubtedly received adequate discovery of the Nichicon issue. Dell produced 139 documents (including attachments) or 1,265 pages in response to Request for Production No. 1. Dell produced 920 documents (including attachments) or 38,638 pages in response to Request for Production No. 6. Thus, Dell produced a total of 1059 documents and 39,903 pages of documents pursuant to the Court's April 30, 2010 Order and in response to Request Nos. 1 and 6. (*Id.* at ¶ 13). With this additional production, AIT has now received from Dell 1,119 documents which mention capacitors and 889 documents which reference Nichicon.[6] (*Id.* at ¶ 14). AIT also has documents it received directly from Nichicon and documents it received from Exponent, Dell's third-party consultant who investigated the Nichicon capacitor issue on behalf of Dell.

**B.  THE LYNN TYSON EMAIL HAS NOTHING TO DO WITH REQUEST FOR PRODUCTION NO. 1.**

---

[5] The titles of other individuals from whom documents were collected include the Product Operations Engineering Senior Consultant, the Product Operations Senior Manager, the Systems Engineering Senior Manager, and the Systems Engineer Senior Consultant.

[6] Prior to the Order, Dell had produced 667 documents which referenced capacitors and 209 which referenced the capacitor manufacturer, Nichicon.

- 8 -
LEGAL02/32114864v3
Case 5:07-cv-00426-H   Document 312   Filed 08/26/10   Page 8 of 13

AIT's effort to connect Dell's response to Request No. 1 with an unrelated email produced eight months earlier is unavailing. In addition, AIT's vague references to possible alterations of the Lynn Tyson email are completely irrelevant to the document production issues and also complete (and incorrect) speculation.

In its brief, AIT suggests that the Lynn Tyson email "show[s] that Dell senior executives were involved in the development of 'talking points' designed to minimize to Dell's customers and shareholders the full extent of capacitor failures." (AIT Brief, p. 2). AIT's contention is plainly contrary to the actual language of the document. The Lynn Tyson email does not characterize the extent of the capacitor failures, nor does it refer to any overarching decisions regarding Nichicon capacitors. It sets out four short talking points that are repeated in various forms in other Dell documents:

- We are aware of a quality issue related to capacitor failure in some Optiplex 270 models.
- The problem poses no risk of safety or data loss for our customers.
- We have been working with our customers to resolve problems in the most effective manner possible (which will vary depending on our customers' needs).
- We're committed to fixing any systems that fail.

(AIT Brief, Ex. A).

From this email, AIT concludes, "it is virtually certain that Dell senior executives would have been involved in the decision to 'withhold, withdraw, or purge Dell OptiPlex computers because of problematic capacitors.'" Again, there was no such "decision" to "withdraw, withhold or purge," a fact known to AIT. Moreover, nothing in Lynn Tyson's email relates to the information sought in Request No. 1. The email does not identify any of its recipients as having worked with Nichicon or with Dell's suppliers who were using Nichicon capacitors, and it does not refer to the withdrawal or purging of

any capacitors. Other than referring to Nichicon, it is simply unrelated. Finally, as discussed above, the email chain was produced in its entirety and not altered in any way prior to its production to AIT. (Meisel Dec. ¶ 15).

### C. SANCTIONS ARE NOT WARRANTED UNDER RULE 37(b).

Dell complied with the Court's Order to produce additional documents, and AIT's motion does not raise any colorable dispute to the contrary. However, even assuming that Dell's supplemental document production fell short of the Court's expectations, Dell's position was substantially justified, and sanctions are not appropriate under Rule 37(b).

A trial court's discretion to impose sanctions under Rule 37(b) for failure to produce documents is "to be exercised discreetly." *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503 (4th Cir. 1977). Sanctions must not be awarded "if the opposing party's nondisclosure, response, or objection was substantially justified [or] other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A); *Decision Insights, Inc. v. Sentia Group, Inc.*, 311 Fed. Appx. 586, 599, 2009 WL 367585, at *12 (4th Cir. Feb. 12, 2009) (attached hereto as **Exhibit F**).

"A legal position is 'substantially justified' if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Decision Insights, Inc.*, 311 Fed. Appx. at 599 (refusing to award sanctions where there was a "genuine dispute" among the parties) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565-66 n.2 (1988)); *see also Bryte v. Am. Household, Inc.*, 142 Fed. Appx. 699, 703, 2005 WL 1805603, at *2-3 (4th Cir. Aug. 2, 2005) (reversing entry of order imposing sanctions because "Sunbeam's position was

- 10 -
LEGAL02/32114864v3
Case 5:07-cv-00426-H   Document 312   Filed 08/26/10   Page 10 of 13

substantially justified.") (attached hereto as **Exhibit G**); *Marano v. Aaboe*, 2007 WL 3195156, at *1 (S.D.N.Y. 2007) (citing *Bowne of New York City, Inc. v. AmBase Corp.*, 161. F. R.D. 258, 265 (S.D.N.Y.1995) (holding that party's failure to produce sales records because of party's belief the records were irrelevant "did not rise to a level warranting the imposition of sanctions.") (attached hereto as **Exhibit H**); *Battle v. Mineta,* 387 F. Supp. 2d 4 (D.D.C. 2005) (denying motion for sanctions after finding that defendant "did make a good-faith effort to obtain the requested personnel files").

Dell's position is substantially justified. AIT's current motion is focused entirely on a "decision" that AIT equates to a recall of the affected capacitors, but AIT knows that no recall ever took place. AIT's request does not reference a "decision," but instead refers to "actions." Moreover, it references particular actions in detail*,* referring specifically to deposition questioning involving Dell's efforts to remove the Nichicon capacitors from the Dell supply chain. In short, Dell located and produced the documents sought in the request, and AIT's subsequent effort to re-positioning the request cannot render Dell's responses inadequate, and certainly does not warrant sanctions.

Respectfully submitted, this 26th day of August, 2010.

/s/ Pressly M. Millen
Pressly M. Millen
North Carolina Bar No. 16178
WOMBLE CARLYLE SANDRIDGE & RICE,
*A Professional Limited Liability Company*
150 Fayetteville Street, Suite 2100
Raleigh, NC 27602
Telephone: (919) 755-2135
Fax: (919) 755-6067
Email: pmillen@wscr.com

/s/ Scott A. Elder
Jane Fugate Thorpe
Georgia Bar No. 279550
Scott A. Elder
Georgia Bar No. 665879
ALSTON & BIRD LLP
1201 West Peachtree Street, NW
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Fax: (404) 881-7777
Email: jane.thorpe@alston.com
Email: scott.elder@alston.com

*Attorneys for Dell Inc.*

## CERTIFICATE OF SERVICE

I certify that on August 26, 2010, I electronically filed this **DELL INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SANCTIONS AGAINST DELL INC. FOR FAILURE TO COMPLY WITH A COURT ORDER** with the Clerk of the Court using CM/ECF which will notify all parties of record in this matter.

/s/ Scott A. Elder
Scott A. Elder
Attorney for Defendant Dell Inc.